# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| LINDSEY KRAEMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-cv-832-RHH |
| | ) | |
| | ) | |
| FRANK J. BISIGNANO,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Plaintiff Lindsey Kraemer's appeal regarding the denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 5.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will affirm the Commissioner's denial of Kraemer's application.

## I.    Background

On or about August 18, 2021, Kraemer applied for DIB, alleging that she has been unable to work due to disability since September 1, 2014. (Tr. 74.) Kraemer alleged disability due to PTSD, major depression severe, generalized anxiety disorder, obsessive compulsive disorder, panic attacks, insomnia, and amnesia. (Tr. 74.) Her application was initially denied and denied again at the reconsideration stage. (Tr. 73-80, 81-90.) Then, she filed a request for Hearing by

---

[1] Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano shall be substituted for Martin O'Malley as the defendant in this suit. *See* 42 U.S.C. § 405(g).

Administrative Law Judge (ALJ). (Tr. 107-109.) On March 1, 2023, the ALJ held a hearing on Kraemer's claim. (Tr. 40-72.) Kraemer was represented by counsel at the hearing, and an impartial vocational expert both testified. *Id.*

In a decision issued on June 21, 2023, the ALJ found Kraemer was not disabled as defined in the Act from the alleged onset date through the date she was last insured. (Tr. 25-26.) On August 4, 2023, Kraemer filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council. (Tr. 167-169.) On June 5, 2024, the Appeals Council denied Kraemer's request for review, and adopted the ALJ's decision in full. (Tr. 1-7.)

## II.     Evidence Before the ALJ

The Court adopts the statement of facts set forth in Kraemer's statement of facts (ECF No. 16-1) and Defendant's response (ECF No. 21-1). Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

On March 1, 2023, Kraemer testified at a hearing before the ALJ (Tr. 40-72.) She testified that she lives with her husband and her two sons, ages nine and twelve. (Tr. 47.) Her daily activities are impacted by her depression, severe anxiety, PTSD, and OCD, which affect her concentration and focus. Her son was abused at preschool, and she can get triggered by news stories involving child sexual abuse, or by seeming someone who looks like the man. (Tr. 53.) With her depression, she experiences extra stress, nervousness, and she estimates that she does not get out of bed three or four days a week. (Tr. 51.)

On days she is able to get up, she tells her children goodbye before her husband takes them to school, then after they leave, she usually naps for about three hours. (Tr. 56.) When she wakes up again, she might eat something, then would probably lay back down to take another

nap. (Tr. 56.) She used to shower daily, but now she does not have the energy. If it is her turn to pick up the kids, she drives to school to pick them up and drives them home. (Tr. 56.) They are self-sufficient and will play while she rests until her husband comes home. (Tr. 57.)

She has no physical issues that limit her driving, but she tends to limit driving to familiar areas so she does not forget where she is, and her parents drive her to a lot of her medical appointments. (Tr. 48.) She drives to pick up her kids from school two to three days a week, and will drive to a nearby store if her kids need something for a project. (Tr. 48, 52.) Sometimes she will sit in a parking lot for a prolonged period before going in, watching other people to see if anyone looks threatening. She experiences racing thoughts and catastrophic thoughts. Her anxiety can cause her to break out in sweat, have difficulty breathing, or have diarrhea. (Tr. 52-53.)

Kraemer's last full-time employment was with Enterprise as a writer. However, they had to let her go because she was missing deadlines and assignments due to her difficulties with concentration and staying on task. (Tr. 48-49.) She left her employer on good terms, and they offered to let her freelance, but the freelance work eventually became too difficult due to her concentration issues. Kraemer explained that she would interview someone for a story via phone, but then not remember what was said or be able to make sense of her notes. (Tr. 49.)

Kraemer used to have issues with her left hip and had injections, but her hip problems have resolved. (Tr. 55.) She has bunions and had issues with her feet and standing and walking, but now she just wears tennis shoes because they don't bother her as much. She can stand about 30 minutes and can walk a block or two without stopping. (Tr. 55.) She can lift 20 to 30 pounds, but probably not continuously. (Tr. 56.)

On August 25, 2021, Kraemer completed a Function Report. (Tr. 194-202.) The report states her "PTSD stress-related amnesia severely hinders [her] ability to work." She has difficulty remembering steps of a process and where she is in the process. It is extremely hard for her to stay on task and focus for extended periods of time. Her depression makes it hard to get out of bed some days, and her anxiety makes it difficult to focus. (Tr. 195.) She has insomnia because she is constantly worried about something bad happening to her kids. (Tr. 196.)

Kraemer lives with her husband and children. She makes sure everyone is safe and tries to keep things in order. She and her husband both care for the kids and their dog. She feeds her dog twice a day, and keeps a note of whether or not the dog has been fed because she forgets. (Tr. 196.)

She is not motivated to shower or care for her hair, and sometimes forgets if she has showered that day. (Tr. 196.) She uses a pill organizer and reminders to keep her meds straight. (Tr. 197.) She prepares store-bought breakfasts and frozen dinners or orders takeout if she is too tired to prepare meals. (Tr. 197.) She cleans "in a limited capacity" and washes clothes but does not put them away. She needs help and reminders to clean. (Tr. 197.)

Kraemer goes outside every day, drives, goes grocery shopping and clothes shopping every two weeks or so, and is able to handle money, but is forgetful about paying bills on time. (Tr. 198.) She is social with friends, watches television, and watches her kids play sports on a regular basis. She used to go out with friends monthly, but now it is twice a year because she has trouble remembering past or current conversations. (Tr. 199.) She spends time with her husband and kids, and has weekly phone calls with her extended family.

Her impairments affect her talking, memory, completing tasks, concentration, understanding, and following instructions. (Tr. 200.) Remembering things is difficult, and it is

- 4 -

hard to complete tasks because she cannot concentrate very long. She can walk a couple miles before needing rest, and she can concentrate about five minutes before she gets distracted. Written instructions are difficult because she won't remember what step she is on, and with spoken instructions, she forgets the instructions. (Tr. 200.) She gets along well with authority figures. (Tr. 201.) She handles changes in routine ok, as long as she can remember what the changes are. She constantly makes lists and writes everything down due to fear she will forget. She is afraid something catastrophic will happen to her kids while they do everyday things. (Tr. 201.)

### III.    Standard for Determining Disability Under the Act

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or

combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work.  20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled.    20 C.F.R. § 404.1520(a)(4)(v).

### IV.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ here found that Kraemer met the insured status requirements through December 31, 2023, and has not engaged in substantial gainful activity since September 1, 2014, the alleged onset date. (Tr. 13-14.) Next, the ALJ found that Kraemer has the following severe impairments: major depressive disorder, posttraumatic stress disorder, obsessive compulsive disorder, osteoarthritis of bilateral feet, degenerative joint disease of the left hip, obesity, and obstructive sleep apnea. (Tr. 14.) The ALJ found Kraemer's Type 2 diabetes mellitus, Vitamin D deficiency, Vitamin B deficiency, rod dysfunction and primary retinal degeneration, closed reduction nasal fracture, right lateral ankle sprain, bilateral

- 6 -

plantar fasciitis, diverticulitis, mild left acromioclavicular joint osteoarthritis, and acquired hypothyroidism were not severe impairments. (Tr. 15.)

The ALJ determined that Kraemer did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 15.) The ALJ also determined that Kraemer had the residual functional capacity to perform light work with the following additional limitations:

> Claimant can lift up to 20 pounds occasionally; lift/carry up to 10 pounds frequently. She can stand/walk for about 6 hours and sit for up to 6 hours in an 8 hour work day, with normal breaks. She can occasionally climb ramps, stairs, ladders, ropes or scaffolds. She can frequently stoop, kneel, and crouch. She should avoid moderate exposure to unprotected heights. She should avoid concentrated exposure to hazardous machinery. Her work is limited to simple and routine tasks. Her work should be in a low stress job, defined as having only occasional changes in the work setting. She cannot perform work that requires hourly quotas. She should have no interaction with the public. She should have only occasional interaction with co-workers and supervisors.

(Tr. 17-18.) The ALJ found that Kraemer is unable to perform any past relevant work. (Tr. 24.) Kraemer was 32 years old and considered a younger individual on the date last insured, and she has at least a high school education. (Tr. 24.) The ALJ found that transferability of job skills is not material. (Tr. 24.) Based on the foregoing, the ALJ found that there were jobs exist in significant numbers in the national economy that Kraemer could perform. (Tr. 24.) These jobs include housekeeping cleaner (Dictionary of Occupational Titles (DOT) No. 323.687-014, light exertion level, SVP 2, unskilled, approximately 200,000 jobs in the national economy), mailroom clerk (DOT No. 209.687-026, light, SVP 2, unskilled, approximately 30,000 jobs in the national economy), and copy machine operator (DOT No. 207.685-014, light, SVP 2, unskilled, approximately 15,000 jobs in the national economy). (Tr. 25.) Therefore, the ALJ concluded that Kraemer was not disabled, as defined in the Act, from September 1, 2014, through June 21, 2023. (Tr. 25.)

## V.    Standard for Judicial Review

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means— and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's

findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## VI.    Discussion

Kraemer argues the ALJ erred in two overarching ways: (1) the ALJ's decision fails to properly evaluate medical opinion evidence; and (2) the RFC is not supported by substantial evidence. Defendant responds that the ALJ complied with the applicable regulations and created an RFC that is supported by substantial evidence on the record as a whole.

### A.  Medical Opinion Evidence

Kraemer argues that the ALJ erred in evaluating the medical opinions of consultative examiner Thomas Spencer, Psy.D.; treating psychiatrist Susan Boyer, M.D.; treating providers Daniel Loiterstein, M.D., Kevin Konzen, M.D., and Jessica Henke, F.N.P.;  and non-examining state agency consultants Margaret Sullivan, Ph.D. and Raphael Smith, Psy.D.[2] Defendant responds that the ALJ properly evaluated the medical opinions and findings under the new regulations.

When evaluating opinion evidence, the ALJ is no longer required to give controlling weight or any weight to opinion evidence. 20 C.F.R. § 404.1520(a). Instead, the ALJ is to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors. 20 C.F.R. § 404.1520c(b)(2). Of these factors, an ALJ must explain how he

---

[2] Although Kraemer makes a general closing statement that the ALJ failed to properly evaluate the supportability and consistency of each of the various opinions in the record (ECF No. 16, at 8), she does not actually criticize the ALJ's evaluation of the opinions of non-examining state agency consultants Steven Fishburn, M.D. and James Weiss, M.D. (*Id.* at 16). *Assuming arguendo* that Kraemer contends the ALJ's evaluation of the consultants' opinion that Kraemer's physical impairments were non-severe was erroneous, any such error would be harmless, as the ALJ found Kraemer had severe physical impairments and considered those impairments in imposing a physical RFC of light work with additional limitations.

considered the factors of supportability and consistency in his decision but need not explain how he considered the other factors. 20 C.F.R. § 404.1520c(b)(2).[3]

The supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). In articulating how she considers the supportability factor, an ALJ may properly consider that the physician's own treatment notes do not support the physician's opinion, that the physician did not consider certain evidence, or that the physician did or did not provide a detailed explanation for the opinion. *Starman v. Kijakazi*, 2021 WL 4459720, at *4 (E.D. Mo. Sept. 29, 2021) (listing cases).

The consistency factor states that "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). In considering opinion evidence, an ALJ can be justified in rejecting an opinion if it contains no explanation of limitations despite containing areas where the doctor could explain the limitations found. *See Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023) (finding that the ALJ appropriately gave a treating doctor's opinion little weight where the doctor "checked some boxes and left blank the short-answer section asking what objective medical findings supported his assessment"); *Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022) (finding physician's opinion "entitled to relatively little evidentiary value on its face, because it was rendered on a check-box and fill-in-the-blank form"); *Thomas v.*

---

[3] The other factors include the relationship with the claimant, specialization, and other factors which can include whether additional evidence was submitted after the date of the opinion. 20 C.F.R. § 404.1520c(c)(3-5). An ALJ is not required to address all factors in her opinion.

*Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (finding that a treating physician's opinion, made in conclusory fashion and which "cite[s] no medical evidence and provide[s] little to no elaboration" can be rejected on that basis alone).

<u>Thomas Spencer, Psy.D.</u>

On May 10, 2022, Thomas Spencer, Psy.D., a consultative psychologist, completed a psychological evaluation. (Tr. 614-618.)

Dr. Spencer based his opinion on Kraemer's allegations, a clinical interview including a mental status exam, and specific medical records. (Tr. 614.) Dr. Spencer's diagnostic impressions were major depressive disorder, recurrent, moderate to severe, and posttraumatic stress disorder. (Tr. 616.) He opined that Kraemer demonstrated moderate to marked impairment in her ability to learn, recall, and use information and to consistently stay on task; she demonstrated marked impairment in her ability to relate to and work with others on a consistent basis; and she could manage her benefits without assistance. (*Id.*)

The ALJ recounted Kraemer's subjective reports, Dr. Spencer's observations, and the results of certain testing conducted. (Tr. 19-20.) He ultimately found Dr. Spencer's opinion to be not persuasive, explaining as follows:

> This opinion is not persuasive because it is inconsistent with the underlying psychological examination findings and not supported by the objective medical records. Specifically, the medical evidence throughout the relevant period consistently showed grossly normal mental status examinations (See Exhibit 11F at 1; 15F at 28). Moreover, the claimant was noted to have an ability to complete homework tasks from her therapist (See e.g., Exhibit 2F). In the underlying examination, the claimant exhibited normal grooming or hygiene, with fair eye contact and soft tone speech. Her motor behavior was delayed but her judgment and insight appeared to be intact (Exhibit 8F at 3). She presented with a restricted affect and intact flow of thought, with average intelligence (Exhibit 8F at 3). Accordingly, the undersigned is not persuaded by this opinion.

(Tr. 20.)

Kraemer contends that the ALJ failed to properly evaluate the supportability of Dr. Spencer's opinion. (ECF No. 16, at 5.)  Specifically, Kraemer asserts that there is no discussion of Dr. Spencer's opinion itself and whether he provided examples of objective evidence and supporting explanation to support his opinion. The undersigned disagrees. "An ALJ's discussion of [a medical source's] treatment and examination notes reflects the ALJ's consideration of the supportability factor with respect to their opinions." *Stephanie B. v. Kijakazi*, No. CV 22-837 (JWB/DTS), 2023 WL 3394594, at *1 (D. Minn. May 11, 2023) (citation omitted). Here, the ALJ explicitly relied on Dr. Spencer's examination of Kraemer, wherein Kraemer exhibited normal grooming and hygiene, her judgment and insight appeared to be intact, and her flow of thought was intact, with average intelligence. Dr. Spencer further noted that she denied thoughts of suicide/homicide, was alert and oriented, she was not observed responding to internal stimuli, and no delusional beliefs were elicited. (Tr. 616.) It was not erroneous for the ALJ to conclude that these findings on examination do not support the presence of marked limitations in areas such as the ability to relate to and work with others or learn and recall. The ALJ also found Dr. Spencer's opinion was inconsistent with Kraemer's consistently grossly normal mental status examinations and her ability to complete her therapy homework. The Court concludes the ALJ properly discussed the factors of supportability and consistency in finding this opinion not persuasive.

<u>Susan Boyer, M.D.</u>

Kraemer's treating psychiatrist, Dr. Boyer, submitted a Medical Source Statement dated March 7, 2022 (Tr. 609-612), and a letter dated February 13, 2023 (Tr. 1168-69). The ALJ determined that Dr. Boyer's opinion was not persuasive. The ALJ wrote:

> The claimant's treating psychiatrist, Susan Boyer, M.D., completed a medical opinion in March 2022 (Exhibits 7F; 19F). This opinion indicated that the

claimant had marked limitations in every domain of mental functioning. The opinion also indicated that the claimant could not consistently interact with co-workers, supervisors, or the general public (Exhibit 7F at 2-3). The opinion indicated that the claimant would be late to work or need to leave work early three or more times a month, with three or more absences from work per month due to hypersomnolence and overwhelming anxiety (Exhibit 7F at 3). Finally, Dr. Boyer opined that the claimant would be unable to maintain focus and concentration for sustained periods of time due to her mood disorder and anxiety (Exhibit 7F at 4). This opinion is not persuasive because it is inconsistent with the underlying psychological examination findings and not supported by the objective medical records. Specifically, the medical evidence throughout the relevant period consistently showed grossly normal mental status examinations (See Exhibit 11F at 1; 15F at 28; 23F at 4-5). Moreover, the claimant was noted to have an ability to complete homework tasks from her therapist (See e.g., Exhibit 2F).

Dr. Boyer provided a narrative letter, which indicated that the claimant "…is not able to keep up with the day to day management of her home, much less work outside the home." (Exhibit 22F). This opinion invades the question of disability, which is a determination reserved for the Commissioner. Therefore, this opinion is neither persuasive or not persuasive.

(Tr. 21.)

Kraemer argues that the ALJ's assessment was the same as his assessment of Dr. Spencer's opinion, and the ALJ provided no explanation of how the supportability and consistency of Dr. Boyer's opinions were considered. The undersigned finds that the ALJ complied with the regulations when evaluating Dr. Boyer's opinions. As an initial matter, it is not error to provide similar rationale for finding two similar opinions not persuasive. Both Dr. Spencer and Dr. Boyer opined that Kraemer had marked limitations (or moderate to marked limitations), and as discussed above, the ALJ properly concluded that such an opinion was inconsistent with the objective medical evidence, citing to medical records reflecting overall normal mental status exam findings. (Tr. 21 (citing Tr. 623, 777, 1173-74); *see also* Tr. 627, 629, 631, 633, 635, 637, 883, 886, 1164). Throughout the record, the ALJ consistently pointed to Kraemer's generally normal mental status exams, including: a December 2020 exam that showed normal mood and behavior, normal thought content, and normal judgment (Tr. 19 (citing Tr.

117)); treatment in 2021 indicating Kraemer's symptoms waxed and waned throughout the treatment notes, but the accompanying mental status examinations were routinely normal, including fair attention and concentration (Tr. 19 (citing Tr. 640-41)); a January 2022 mental status exam showing stable affect and mood (Tr. 19 (citing Tr. 602)); a September 2022 initial mental status exam for TMS treatments wherein her mood was sad with anxious affect, but she had normal thought content and processes, with fair insight and intact judgment (Tr. 20 (citing Tr. 1164)); and mental status exams showing normal findings throughout the course of her OCD treatment (Tr. 20-21 (citing Tr. 623, 627, 629, 631, 635, 637)). Then, within his evaluation of Dr. Boyer's opinion, the ALJ specifically noted that Dr. Boyer's opinion is not supported by her own records reflecting grossly normal mental status exams (Tr. 21 (citing Tr. 1173-74)), and is not consistent with Licensed Clinical Social Worker Jacobsen's records (Tr. 21 (citing Tr. 623)) or NP Henke's records (Tr. 21 (citing Tr. 777)). Kraemer insists that Dr. Boyer provided objective evidence to support her opinion, such as her identifying objective signs and symptoms (appearance of exhaustion, indecisive in exam, lack of interest in engaging with others, forgetful), and her explanation that Kraemer is "unable to maintain focus, concentration for sustained periods of time due to her mood disorder and anxiety." (Tr. 612.) However, such evidence merely supports an alternative view of the evidence, it does not render the ALJ's evaluation of the opinion deficient. The standard of review is whether substantial evidence supports the ALJ's findings, not whether substantial evidence supports contrary findings. *See England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007) ("If substantial evidence supports the decision, we will not reverse, even if substantial evidence could have been marshaled in support of a different outcome.") (citation omitted).

Lastly, the ALJ did not err by deeming Dr. Boyer's letter neither persuasive or not persuasive. Because Dr. Boyer's letter did not identify what the claimant "can still do" despite her impairments, and the issue of whether Kraemer can work is a matter reserved to the Commissioner, Dr. Boyer's conclusion did not constitute a medical opinion under section 404.1513(a)(2). *See Pierce v. Kijakazi*, No. 4:20 CV 1426 CDP, 2022 WL 888141, at *7 (E.D. Mo. Mar. 25, 2022) (citing Revisions to Rule Regarding the Evaluation of Medical Evidence, 2016 WL4764999, 81 Fed. Reg. 62560-01 at *6 (Sept. 9, 2016) ("A more appropriate focus of medical opinions would be perspectives from medical sources about claimants' functional abilities and limitations" rather than claimants' "[d]iagnoses and prognoses" – which "do not describe how an individual functions.")).

<u>Daniel Loiterstein, M.D.</u>

Dr. Boyer referred Kraemer to Dr. Loiterstein for Treatment Refractor Depression with Transcranial Magnetic Stimulation, or TMS. This referral followed Kraemer's failure to respond to medication therapies prescribed by Dr. Boyer. In a letter dated February 9, 2023, Dr. Loiterstein explained that he treated Kraemer since September 15, 2022, she did not respond to TMS and was transitioned to treatment with Spravato, or intranasal ketamine, and after these treatments, she continues to suffer with significant psychiatric morbidity and disability. He stated that her severe symptoms include despair, depression, feelings of hopelessness, helplessness, low self-esteem, excessive guilt, cognitive impairment/dulling and severe anxiety. He opined that "[t]hese symptoms interfere with all aspects of her daily functioning and keep her from meaningful activity and relationships." (Tr. 1167.) Dr. Loiterstein stated that if Spravato is unable to provide her relief, more intensive treatment such as electroconvulsive treatment has been recommended. (*Id.*)

> The ALJ found Dr. Loiterstein's opinion was not persuasive. The ALJ explained:
> This opinion is not persuasive. It is vague in meaning, and not supported by
> objective mental status examinations. Instead, the vague opinion appears to recite
> only the claimant's subjective allegations. Accordingly, this opinion is not
> persuasive.

(Tr. 21-22.)

Plaintiff argues the ALJ failed to properly evaluate the supportability and consistency of Dr. Loiterstein's opinion, instead only considering the lack of objective findings. The undersigned finds that the ALJ sufficiently addressed both factors. As the ALJ noted, Dr. Loiterstein's opinion regarding Kraemer's limitations was vague in meaning. Dr. Loiterstein generally stated that Kraemer's severe symptoms "interfere with all aspects of her daily functioning" and keep her from meaningful activity and relationships. Such an opinion does not provide quantifiable or function-by-function limitations, and therefore, the ALJ properly concluded it was vague. This was an acceptable reason to find Dr. Loiterstein's opinion not persuasive, as it indicated that Dr. Loiterstein's opinion contained less relevant "supporting explanations" and therefore less supportability. 20 C.F.R. § 404.1520c(c)(1); *see also Brock W. D. v. Dudek*, No. 24-CV-01101 (ECW), 2025 WL 942845, at *32 (D. Minn. Mar. 28, 2025) ("[A]n ALJ need not credit opinions given in terms that do not have a clear meaning in the vocational context."); *Arden B. v. Kijakazi*, No. 21-CV-2008-KEM, 2022 WL 4636221, at *6 (N.D. Iowa Sept. 30, 2022) (finding the ALJ did not err where the ALJ found a medical opinion's limitations too vague to be instructive). Additionally, the ALJ also discounted the opinion because it appeared to be based on Kraemer's subjective allegations. The absence of objective medical evidence supporting a medical source's opinion is properly considered under the supportability factor. S*ee Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) ("On the supportability prong, *see* 20 C.F.R. § 404.1520c(c)(1), the ALJ found that Dr. Addison-Brown

relied heavily on the claimant's subjective description of her symptoms and limitations. While Dr. Addison-Brown conducted some diagnostic procedures during her evaluation, Dr. Addison-Brown's report states that at least some of her diagnoses were based on self-reports, which supports the ALJ's finding.") (cleaned up). Finally, the ALJ addressed the consistency of Dr. Loiterstein's opinion by finding that his conclusion regarding interference with all aspects of her daily functioning was not consistent with the objective mental status exams, which are documented throughout the record and noted by the ALJ throughout his opinion.

<u>Kevin Konzen, M.D. & Jessica Henke, F.N.P.</u>

Dr. Kevin Konzen and FNP Jessica Henke completed a Physical Residual Functional Capacity Questionnaire dated February 8, 2023.[4] (Tr. 848-851.) The opinion indicated Kraemer can sit about 4 hours in an 8-hour work day, and can stand/walk about 2 hours. They opined she can sit or stand for 30 minutes at a time, and then would need to get up to walk for six to ten minutes every 30 minutes, with the ability to shift positions at will from sitting, standing, or walking, and with the need for unscheduled 10-15 minute breaks every hour. (Tr. 848-849.) She can occasionally lift up to 20 pounds, and can rarely hold her head in a static position. She has no limitations with reaching, handling, or fingering, but can only use her hands, fingers, and arms for 50% of the workday, and will be absent from work more than four days per month. (Tr. 850-51.)

> The ALJ found the opinion was unpersuasive, explaining:
>
> It is inconsistent with the medical evidence of record, which does not indicate an impairment that would reasonably interfere with the claimant's use of her hands, fingers and arms. Moreover, the opinion is far more restrictive than the claimant's own reports of her daily activities, which included walking two miles for exercise. It is also important to note that, despite the claimant's osteoarthritis and obesity,

---

[4] The Questionnaire was completed by Nurse Practitioner Henke, who primarily provided Kraemer's treatment, and Dr. Konzen co-signed as her supervising physician. (Tr. 851.) The opinion will be referred to as NP Henke's opinion.

she was regularly noted to exhibit a normal gait. (See e.g. Exhibit 15F at 9-10). The opinion is further devoid of any support in the form of explanation for the suggested limitations, in light of the objective evidence of record, discussed above. Accordingly, this opinion is found to be unpersuasive.

(Tr. 23.)

Kraemer argues that the ALJ failed to evaluate the supportability and consistency of the opinion. Kraemer insists that NP Henke provides supporting explanations for the opinion, pointing to the fill-in-the-blank answers listed under "symptoms" (concentration issues, fatigue, social withdrawal, irregular bowels, impaired memory, and sleep disturbances), "clinical findings and objective signs" (inattentiveness, slowed movements and mental interactions, disturbed sleep pattern, fidgety movements, labile emotions), and "[d]escribe the treatment and response including any side effects of medication that may have implications for working" (patient with requirement of frequent med adjustment by psych with depression that remains active despite numerous meds/adjustment). (Tr. 848.) However, these answers offer no specific, objective evidence in support of NP Henke's opinions. For example, while NP Henke opines Kraemer is limited to use of her hands, fingers, and arms only 50% of the day, Kraemer has not raised a hand, finger, or arm limitation as an impairment, she has not identified any documentation of treatment for such an issue, and NP Henke's own Physical RFC Questionnaire states she has no limitations in reaching, handling, or fingering. (Tr. 850.) *See also Edington v. Saul*, No. 1:19-CV-68 RLW, 2020 WL 6888562, at *11 (E.D. Mo. Nov. 24, 2020) (under prior regulations, "[i]t was not erroneous for the ALJ to have considered the fact that Ms. Guntharp may have relied, in part, on Plaintiff's subjective reports, especially when Ms. Guntharp did not treat Plaintiff for her neck or back, and she provided very little treatment for her shoulder."). Moreover, the purported explanations identified by Kraemer also fail to explain why NP Henke opined that she cannot walk more than one city block without rest. The ALJ appropriately found this limitation

inconsistent with Kraemer's own reports of two-mile walks, and not supported by NP Henke's own treatment records. (Tr. 23 (citing Tr. 758-759); *see also* Tr. 200). The Court further notes that NP Henke's opinion stems from a check-box and circle option form. *See Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. May 20, 2022) (finding physician's opinion entitled to relatively little evidentiary weight on its face, because it was rendered on a check-box and fill-in-the-blank form.).

In light of the ALJ's explanation and the ALJ's analysis of the medical records reflecting treatment of physical impairments immediately preceding his analysis of NP Henke's opinion (Tr. 22-23), the undersigned concludes that the ALJ properly discussed the factors of supportability and consistency in finding this opinion not persuasive. *See Beyes v. Kijakazi*, No. 4:22CV614 SRW, 2023 WL 1765185, at *9 (E.D. Mo. Feb. 3, 2023) (internal quotation marks and citation omitted) ("The paragraph concerning the ALJ's evaluation of [a medical] opinion cannot be read in isolation but must be read as part of the overall discussion of plaintiff's RFC assessment. When read in context, as part of the overall discussion of Plaintiff's RFC, the Court finds the ALJ appropriately considered and supported the determination with substantial medical and nonmedical evidence.").

<u>Margaret Sullivan, Ph.D. & Raphael Smith, Psy.D.</u>

Drs. Sullivan and Smith are non-examining doctors who submitted their opinions on January 14, 2022, and May 13, 2022, respectively. (Tr. 76-77, 85-86.)

On initial review, Dr. Sullivan opined that the totality of the evidence indicates Kraemer retains the ability to remember, understand, concentrate, and persist with simple work tasks. (Tr. 77.) Dr. Sullivan did not think any social interaction or adaptation limitations were warranted, but found moderate limitations in the following categories: the ability to understand and

remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and the ability to sustain an ordinary routine without special supervision. (Tr. 78.) Dr. Sullivan opined that although Kraemer could understand and remember simple instructions and concentrate and persist with simple instructions, she would struggle with multi-stepped and more complex instructions. (*Id.*)

On reconsideration, Dr. Smith reviewed the evidence available to Dr. Sullivan, as well as additional mental health appointments and the consultative exam records that took place after Dr. Sullivan formed an opinion. Based on his review, Dr. Smith found the initial decision appeared accurate and reasonable but imposed additional social limitations. (Tr. 85.) He agreed with Dr. Sullivan that although Kraemer could understand and remember simple instructions and concentrate and persist with simple instructions, she would struggle with multi-stepped and more complex instructions. (Tr. 88.) Dr. Smith also found that although Kraemer has adaptation limitations, she was not significantly limited in the listed adaptation functions, and she is capable of adapting to changes that are predictable and introduced gradually. (*Id.*) Dr. Smith further opined that Kraemer has moderate limitations in her ability to interact appropriately with the general public and her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and therefore she would function best in a setting where there is little need for direct supervision or frequent interactions with coworkers and members of the public. (*Id.*)

In evaluating the non-examining consultative opinions of Drs. Sullivan and Smith, the ALJ wrote:

The State Disability Determination psychological consultants opined that the claimant retained the ability to concentrate and persist with simple instructions but would struggle with more complex instructions. (Exhibits 2A, 9F). This opinion is not persuasive because additional medical records that were submitted after the opinion was given shows that the claimant has additional mental limitations. A subsequent opinion rendered during the reconsideration level, the State Disability Determination psychological consultant indicated that the claimant could understand, remember, concentrate and persist with simple instructions, and function best in a setting where there is little need for direct supervision or frequent interactions with coworkers and members of the public, and she is capable of adapting to changes that are predictable and introduced gradually (Exhibits 4A, 10F). The undersigned considered these opinions and finds that the later opinion of the State Disability Determination psychological consultant is most persuasive. This is because subsequent medical records, discussed in detail above, are consistent with the need for additional interpersonal and adaptation limitations, as reflected in the above residual functional capacity. Moreover, the later opinion is better supported by explanation, and a thorough review of the additional available medical records. Accordingly, the undersigned finds the opinion of the State Disability Determination consultant on the reconsideration level to be most persuasive.

(Tr. 22.)

Kraemer argues that the ALJ failed to comply with the regulations as to both opinions. The undersigned disagrees. The ALJ's discussion explicitly discounted Dr. Sullivan's opinion because the record supported greater restrictions associated with Kraemer's mental limitations—mental limitations that were reflected in records submitted after Dr. Sullivan's review. (Tr. 22.) Although the ALJ does not point to those specific records, he fairly summarized those records previously in the opinion. (*See* Tr. 19-20 for the ALJ's consideration of a January 2022 appointment with Dr. Boyer and the May 2022 consultative exam with Dr. Spencer.) Moreover, to the extent the ALJ's explanation was deficient on this score, he formulated an RFC that imposed greater limitations than those opined by Dr. Sullivan; and therefore any error in failing to elaborate in his analysis is harmless. *See, e.g., Berdinka v. O'Malley*, No. 4:22 CV 1004 ACL, 2024 WL 518919, at *5 (E.D. Mo. Feb. 9, 2024) ("The ALJ ultimately found that Berdinka had

greater exertional limitations than found by Dr. Lu—as well as non-exertional limitations—due to his combination of impairments that were not considered by Dr. Lu. As such, any errors in the ALJ's explanation of supportability and consistency with regard to Dr. Lu's opinion did not affect the outcome and were harmless."); *Laramie v. Kijakazi*, No. 4:22-CV-107 ACL, 2023 WL 2610215, at \*5 (E.D. Mo. Mar. 23, 2023) ("[b]ecause the ALJ found that the record supported *greater* mental limitations than those found by the state agency psychological consultants, any error in the ALJ's failure to elaborate on her analysis of these prior administrative findings was harmless."); *see also Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (finding harmless error when "case was not a close call" and further clarification "would not have significantly swayed the ALJ's decision").

Kraemer also criticizes the ALJ's evaluation of Dr. Smith's opinion, arguing that he again refers to subsequent medical records, but does not make it clear what specific evidence is referred to. However, immediately preceding his evaluation of the state agency physicians' opinions, the ALJ summarized the evidence related to Kraemer's mental function, including the specific records identified by Dr. Smith in his opinion. (Tr. 18-21; 85-86.)

Kraemer faults Dr. Smith for not supporting his opinion. However, Dr. Smith provides a summary of records reviewed as well as his explanation for gathering additional information and imposing limitations as he did. For example, Dr. Smith notes that on reconsideration, "claimant states that there has been no change in medical conditions; no change in activities," and he reviewed additional evidence not available to Dr. Sullivan when she formulated her opinion, including records of two additional mental health appointments, and Dr. Boyer's medical source statement. Dr. Smith explained:

> [H]er psych treating provider opin[ed] marked limitations across all functional domains. The treatment notes by this provider appear somewhat vague as to

> symptoms and cognitive limitations, and there were no formal psych assessments or MSE's in the case notes (including the therapist's notes) with which to affirm or dispute this level of severity. A [consultative exam] was therefore requested.

(Tr. 85.) Dr. Smith considered Dr. Spencer's consultative exam, as did the ALJ, in finding that subsequent records are consistent with the need for additional interpersonal and adaptation limitations. The ALJ properly considered the supportability and consistency of Dr. Smith's opinions by discussing in detail the medical findings and observations in the record considered and relied on by Dr. Smith, including the evidence unavailable to Dr. Sullivan, and ultimately concluding that Dr. Smith's opinion was better supported than Dr. Sullivan's opinion.

In sum, the Court concludes the ALJ properly evaluated the medical opinions in compliance with the regulations.

## B. RFC Determination

Kraemer also argues that the RFC is not supported by substantial evidence. Specifically, she argues that the physical RFC is not supported by "some medical evidence," citing a lack of evidence regarding Kraemer's ability to function and contending that the ALJ may need to further develop the file by getting an RFC assessment from the treating source or a CE.

The RFC "'is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities[.]'" *Roberson v. Astrue*, 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting SSR 96-8p, 1996 WL 374184, at *3 (Soc. Sec. Admin. July 2, 1996)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (internal quotation marks and citation omitted). "An ALJ's RFC assessment which is not properly informed and supported by some

medical evidence in the record cannot stand." *Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)).

First, Kraemer contends the ALJ did not support the physical RFC with sufficient medical evidence because there was only one opinion regarding Kraemer's physical ability to function, and the ALJ found the opinion unpersuasive.[5] Although the record contains medical evidence generally, Kraemer argues the record was insufficient to assess her RFC because the record does not contain an accepted opinion from a medical source addressing her physical limitations. However, RFCs do not require medical opinions. *See, e.g.*, *Stringer v. Berryhill*, 700 F. App'x 566, 567–68 (8th Cir. 2017) (affirming RFC without medical opinion evidence); *Myers v. Colvin*, 721 F.3d 521, 526–27 (8th Cir. 2013) (same); *Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012) (same); *see also Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("There is no requirement that an RFC finding be supported by a specific medical opinion."); *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (noting a medical opinion is not necessary to assess a claimant's RFC). Rather, the RFC requires "some medical evidence" of Plaintiff's ability to function in the workplace, such as medical records and observations of treating physicians. *See Hensley*, 829 F.3d at 932 (holding physicians medical records is sufficient medical evidence for RFC purposes); *see also* 20 C.F.R. § 404.1545(a)(3) (considering "descriptions and observations" of a claimant's limitations from an impairment as evidence to support RFC). "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the [ALJ]." *Cox*, 495 F.3d at 619–20.

Here, as discussed above, the ALJ found NP Henke's opinion regarding her physical function to be unpersuasive because, *inter alia,* the opined limitations were more restrictive than

---

[5] Kraemer's brief states there is only one opinion regarding her mental ability to function, but the undersigned presumes based on context that she meant physical ability, not mental ability. (ECF No. 16 at 8.)

other evidence of record. (Tr. 23.) The ALJ also found the state agency consultants' opinions that Kraemer's physical impairments were non-severe were not persuasive because Kraemer's osteoarthritis and obesity reasonably limited her to the light range of work with additional postural and environmental limitations. (*Id.*) Because the ALJ found the medical opinions unpersuasive, Kraemer contends it is unclear how the ALJ formulated the physical RFC. Therefore, the main issue is whether the record as a whole contains substantial evidence— including medical evidence addressing Kraemer's ability to function in the workplace—that supports the RFC. The Court answers this question in the affirmative.

To support the RFC determination, the ALJ looked at the numerous normal and unremarkable findings in the record observed by Kraemer's treating physicians. "In the absence of medical opinion evidence, medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings." *Hensley*, 829 F.3d at 932 (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011) (internal quotations omitted)); *see also Flynn v. Astrue*, 513 F.3d 788, 793 (8th Cir. 2008) (upholding RFC based on physician's reports and findings).

The ALJ considered Kraemer's physical impairments, including osteoarthritis of the bilateral feet, degenerative joint disease of the right hip, obesity, and obstructive sleep apnea. (Tr. 22-23.) Although Kraemer experienced left hip pain and received conservative treatment for the same in 2017 (Tr. 22, 296, 302, 385, 383), she reported to the ALJ at the March 2023 hearing that her hip problems were resolved (Tr. 55). Kraemer complained of foot pain to her medical providers, and imaging in October 2014, November 2015, and November 2017, revealed bilateral metatarsophalangeal joint osteoarthritis. (Tr. 22, 294, 309, 355, 367, 380.) The ALJ noted that despite Kraemer's osteoarthritis and obesity, she was regularly noted to exhibit a

normal gait. (Tr. 23.) She also had generally unremarkable physical exams, wherein she had normal gait, range of motion, no swelling, and 5/5 strength. (Tr. 380, 388, 391, 409, 413, 579.) The undersigned finds that the record includes substantial medical evidence addressing Kraemer's physical ability to function.

Additionally, despite having generally unremarkable physical exams and conservative treatment during the relevant time period, the ALJ limited Kraemer to light work with additional postural and environmental limitations, which imposes a significant limitation in itself, demonstrating that the ALJ considered her physical limitations in making the RFC determination. *See Choate v. Barnhart,* 457 F.3d 865, 869–70 (8th Cir. 2006) (restriction to light work with environmental restrictions considered to be significant limitation).

Kraemer also criticizes the ALJ's mental RFC determination. Kraemer contends the ALJ improperly relied on certain evidence, namely Kraemer's ability to complete therapy homework, and the lack of objective findings or mental status exam findings during her mental health appointments. The undersigned is not persuaded by Kraemer's arguments. As an initial matter, it is completely appropriate for the ALJ to rely on mental status exams and the ability to complete therapy homework in evaluating both Dr. Boyer's opinion and Kraemer's RFC. *See, e.g., Marion v. Saul*, No. 19-CV-76-LRR, 2020 WL 2482124, at *10 (N.D. Iowa Apr. 21, 2020) ("Dr. Hansen treated Claimant only with conservative once-a-month therapy sessions and homework such as tapes and exercises, which does not indicate the disabling level of depression he outlined in his opinion."), *report and recommendation adopted sub nom. Marion v. Comm'r of Soc. Sec.*, No. 19-CV-76-LRR, 2020 WL 2475579 (N.D. Iowa May 13, 2020; *Mills v. Colvin*, No. 5:15-CV-06003-NKL, 2015 WL 5785691, at *5-6 (W.D. Mo. Oct. 2, 2015) (where the ALJ noted

- 26 -

claimant's activities, including completing her therapy homework, the ALJ "appropriately considered this evidence as detracting from [claimant's] allegations of disabling limitations").

In addition to considering the medical evidence and opinion evidence, the ALJ also considered Kraemer's testimony and reported daily activities. The ALJ explained:

> As discussed above, the claimant engaged in self-employment, and she reported an ability to care for her children and pets, clean, do laundry, drive, shop, manage money, and engage in social activities (Exhibit 1E). It is not that the undersigned concludes that the claimant's daily activities are unlimited, as the above residual functional capacity reflects that her mental and physical impairments likely pose some restriction on her daily activities. However, the evidence and resulting functional limitations do not result in a finding of disability.

(Tr. 23.) The ALJ also noted that in August 2021, Kraemer reported she was able to fly to Baltimore to spend time with her husband, and she made progress during psychotherapy treatment. (Tr. 19, 322.) Further, while her symptoms waxed and waned throughout the treatment notes, the accompanying mental status exams routinely showed grossly normal findings, with fair attention and concentration noted. (Tr. 19.) The ALJ also considered that treatment notes reflected certain activities inconsistent with disabling impairment, such as going to a lunch with a friend after treatment or attending her children's sporting events. (Tr. 20.) The ALJ's opinion reflects adequate consideration of the evidence in the record regarding Kraemer's subjective reports. *See, e.g., Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018) (claimant's self-reported activities of caring for young son, preparing his meals, doing housework, shopping for groceries, handling money, watching television, and driving a car when necessary showed that claimant could work.).

Despite the generally unremarkable mental status examinations, lack of inpatient treatment or hospitalization for mental health impairments, and evidence of improvement with medication, the ALJ still included multiple mental limitations in the RFC. That is to say, the ALJ

- 27 -

considered Kraemer's reported limitations, and the waxing and waning of her mental health symptoms. As to understanding, remembering, or applying information, the ALJ opined that "a limitation to simple tasks is necessary to avoid exacerbation of the claimant's mental impairments." (Tr. 16.) As to interacting with others, despite noting that Kraemer did not allege significant interpersonal difficulties, he still found her to have moderate limitation in this area due to her depression and anxiety, and found she should be "limited in her interpersonal interactions to lower her exposure to stressful situations." (Tr. 17.) With regard to concentration, persistence, or maintaining pace, he found "the record is significant for allegations of depression, which, along with physical pain, would be expected to interrupt the claimant's focus." (Tr. 17.) In finding moderate limitations in the ability to adapt or manage oneself, the ALJ acknowledged Kraemer experienced some fluctuations in her mental health. (Tr. 17.) He explained:

> Overall, the undersigned finds that the claimant is reasonably limited to simple and routine tasks, in low stress jobs, without hourly quotas or interactions with the public, and only occasional interacts with co-workers and supervisors. These limitations are necessary to limit the claimant's exposure to stressful situations, which could exacerbate her underlying mental impairment symptoms. However, further limitations are not supported by the objective evidence of record, which routinely showed intact cognition, judgment and impulse control, with the ability to interact appropriately with others, including medical providers (Exhibits 8F at 3; 11F at 1, 3; 12F at 1; 20F at 5, 8; 23F at 4-5).

(Tr. 21.) The ALJ sufficiently accounted for Kraemer's symptoms by finding moderate impairments in all four of the paragraph B criteria and limiting her to simple and routine tasks, with only occasional changes in the work setting, no work that requires hourly quotas, no interaction with the public, and only occasional interaction with co-workers and supervisors. *See, e.g., Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (RFC restricting a claimant to "work at a normal pace without production quotas" was consistent with the claimant's moderate limitation in concentration, persistence, or pace); *Salkic v. Saul*, No. 4:18-CV-1901 HEA, 2020

WL 805868, at *3 (E.D. Mo. Feb. 18, 2020) (limitations to "simple routine tasks" adequately captured the plaintiff's moderate limitations in concentration and attention); *Burrow v. Saul*, No. 4:18-CV-1226 PLC, 2020 WL 1952597, at *7 (E.D. Mo. Apr. 23, 2020) (ALJ adequately accounted for panic attacks occurring two to four times per month, excessive worry, difficulty sleeping, mood lability, crying spells, and other symptoms by limiting plaintiff to occasional interaction with supervisors, coworkers, and the public); *Fleming v. Colvin*, No. 4:15-CV-1150 SPM, 2016 WL 4493683, at *8 (E.D. Mo. Aug. 26, 2016) (RFC addressed the plaintiff's concentration deficit by limiting the plaintiff to "simple, repetitive tasks," "only occasional interaction with supervisors, co-workers and the public," and work "which does not require close attention to detail").

In sum, the ALJ's RFC determination is supported by substantial evidence and explained in adequate detail. While Kraemer may disagree with the ALJ's conclusion, this Court does not substitute its own judgment for that of the ALJ, even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). "[The Court's] task is not to reweigh the evidence, and [the Court] may not reverse the Commissioner of the Social Security Administration's decision merely because substantial evidence would have supported an opposite conclusion or merely because [the Court] would have decided the case differently." *Harwood v. Apfel*, 186 F.3d 1039, 4042 (8th Cir. 1999) (emphasis added).

## VII.    Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. (ECF No. 1, 16.)

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **AFFIRMED**.

Dated this 30th day of September, 2025.

RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE